UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>United States of America</u>

    v.                                     Civil No. 11-cv-543-JD
                                                  Opinion No. 2012 DNH 170

<u>100 Counterfeit CISCO</u>
<u>GLC-SX-MM Computer Parts, et al.</u>


<u>O R D E R</u>


    The United States brings a forfeiture action under 18 U.S.C. § 2323(a)(1) and 19 U.S.C. § 1526(b) against counterfeit computer parts that were seized during an investigation by Immigration and Customs Enforcement ("ICE").  In March and August of 2011, ICE agents detained and searched packages containing computer parts that arrived at the Dover, New Hampshire, Post Office and were addressed to Direct Wholesale International, Inc. ("Direct Wholesale").  After the computer parts were determined to be counterfeit, the United States seized them and filed a forfeiture complaint against the parts as defendants in rem.

    Direct Wholesale filed a claim for the computer parts in the forfeiture proceeding.  Direct Wholesale now moves to suppress the use of the computer parts as evidence in the proceeding, arguing that the warrantless detention and search of the packages and seizure of the parts by ICE was done in violation of the

Fourth Amendment.  The United States responds, arguing that Direct Wholesale's motion is procedurally deficient and that the search of the packages and seizure of the parts was authorized by statute.

I. Procedural Issue

The United States contends that Direct Wholesale improperly relied on the forfeiture complaint as the basis for the motion to suppress, arguing that Local Rule 7.1(a)(2) requires affidavits or other documents to support the facts that are the basis of a motion and that the complaint cannot support a motion to suppress.  The United States further contends that because Direct Wholesale relied on the complaint, without providing additional factual support, the motion to suppress must be denied.  Direct Wholesale points out that it relied on the facts provided in the United States's verified complaint and states that additional facts were unnecessary for it to support the motion.

Local Rule 7.1(a)(2) provides, in pertinent part: "Every motion and objection which require consideration of facts not in the record shall be accompanied by affidavits or other documents showing those facts."  As such, the rule requires affidavits and other documents only when the facts necessary for considering the

motion are <u>not</u> in the record. Direct Wholesale asserts that the necessary facts are in the complaint.

The United States contends, however, that because the government is not required to plead facts in the complaint to support the search for and seizure of forfeited property, a forfeiture complaint cannot serve as the basis for a motion to suppress. In support, the United States cites <u>United States v. $78,850.00 in U.S. Currency</u>, 444 F. Supp. 2d 630, 636 (D.S.C. 2006). There the court distinguished between motions to dismiss and motions to suppress in a forfeiture proceeding and explained that a motion to suppress "does not address the validity of the face of the complaint, but rather it addresses whether particular evidence should be excluded because it was illegally acquired." <u>Id.</u>

In this case, Direct Wholesale relied on the facts pleaded in the verified complaint to support the motion to suppress. The motion does not challenge the sufficiency of the complaint but instead argues that the search for and seizure of the parts, as described in the complaint, violated the Fourth Amendment. In response, the United States provided the declaration of the ICE agent involved in the search and seizure, Special Agent Donald A. Lenzie, and other documents to support its objection to the motion.

Because the United States provided additional factual materials to support its objection, the motion to suppress will not be decided based on the complaint alone. To the extent the United States's objection is based on a theory that the motion to suppress must be denied because Direct Wholesale relied on the verified complaint, that theory is not persuasive.[1]

II. Validity of Search and Seizure

Rule G of the Supplemental Rules for Admiralty, Maritime, and Asset Forfeiture Actions provides the procedures for forfeiture actions in rem. Supplemental Rule G(8)(a) states that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." If the motion is granted and use of the defendant property as evidence in the proceeding is suppressed, forfeiture of the property nevertheless may proceed "based on independently derived evidence." Id.

The Fourth Amendment applies to searches and seizures conducted for purposes of civil forfeiture. United States v.

---

[1] In appropriate circumstances, a verified complaint is treated as the functional equivalent of an affidavit. Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991); Fogle v. Wilmington Finance, 2011 WL 320572, at *1 n.1 (D.N.H. Jan. 31, 2011).

James Daniel Good Real Prop., 510 U.S. 43, 50 (1993).  Fourth Amendment protections are codified for purposes of forfeiture actions at 18 U.S.C. § 981(b)(2)(B).  Because the exclusionary rule also applies in forfeiture proceedings, claimants may challenge the legality of a search and seizure of defendant property.  See One 1958 Plymouth Sedan v. Commonwealth of Penn., 380 U.S. 693, 702 (1965).

It is undisputed in this case that the detention and search of the packages and seizure of the computer parts was not done pursuant to a warrant.  Under the Fourth Amendment, warrantless searches and seizures are illegal unless a specific exception applies.  United States v. Camacho, 661 F.3d 718, 724 (1st Cir. 2011).  The United States relies on the exceptions provided by 19 U.S.C. § 1582 and § 1583 and by 19 U.S.C. § 482.

A.  Sections 1582 and 1583

Section 1582 authorizes the detention and search of persons and baggage at the border when they are coming into the United States from foreign countries.  Section 1583 authorizes the examination of outgoing mail of domestic origin at the border. The United States provides no developed analysis or explanation as to how § 1582 and § 1583 would apply in this case to provide an exception to the warrant requirement of the Fourth Amendment.

Direct Wholesale asserts that § 1583 does not apply because the Dover Post Office is not a point of entry or the actual border.

In the absence of a developed argument to show how § 1582 or § 1583 would apply in this case, that theory is not sufficient to support the United States's objection.  See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

B.  Section 482(a)

Section 482(a) authorizes Customs officers to inspect incoming international mail if the officer has "a reasonable cause to suspect there is merchandise which was imported contrary to law . . . ."  The standard of "reasonable cause to suspect" is less stringent than the probable cause standard.  United States v. Ramsey, 431 U.S. 606, 612 (1977).  While the statute authorizes searches of international mail "wherever found," the Supreme Court determined that warrantless searches pursuant to § 482(a) are reasonable under the Fourth Amendment when conducted at the border or the port of entry but declined to consider any broader geographical scope for searches pursuant to § 482(a). Ramsey, 431 U.S. at 609 n.3 & 615 n.11.

1. <u>Border or Point of Entry</u>

The parcels addressed to Direct Wholesale were seized and initially searched at the Dover Post Office. It is undisputed that the Dover Post Office is not an international border checkpoint or point of entry. The United States contends that the post office was the functional equivalent of the border or an extension of the border in this case. Direct Wholesale states that the post office was not a point of entry but does not address whether the post office served as the functional equivalent of the border or an extension of the border.

The border search exception to the requirements of the Fourth Amendment "is not limited to searches that occur at the border itself but includes searches that take place at the 'functional equivalent' of a border - such as, for example, at the airport prior to a package being sent overseas, or at a post office where incoming international mail is processed." <u>United States v. Momoh</u>, 427 F.3d 137, 143 (1st Cir. 2005). Courts have interpreted § 482(a) to apply to places that are the "functional equivalent" of the border and to those that are construed to be an extension of the border in a variety of circumstances. <u>See, e.g.</u>, <u>United States v. Seljan</u>, 497 F.3d 1035, 1039-40 (9th Cir. 2007) (FedEx regional hub in Oakland, California, was functional equivalent of the international border); <u>United States v. Gurr</u>,

471 F.3d 144, 148 (D.C. Cir. 2006) (airport following an international nonstop flight was functional equivalent of the border); United States v. Sahanaja, 430 F.3d 1049, 1053-54 (9th Cir. 2005) (post office in Duarte, California, was deemed an extension of the border); United States v. Boumelhem, 339 F.3d 414, 421 & n.3 (6th Cir. 2003) (railroad yard in Detroit, Michigan, was functional equivalent of the border); United States v. Yang, 286 F.3d 940, 944-45 (7th Cir. 2002) (international customs at O'Hare International Airport was functional equivalent of the border and additional search was justified as an extended border search); United States v. Hyde, 37 F.3d 116, 119-20 & n.2 (3d Cir. 1994) (describing functional equivalent of the border and extended border concepts).

In addition, the Supreme Court discussed the doctrine of searches at the functional equivalent of the border in the context of a warrantless automobile stop purportedly authorized by 8 U.S.C. § 1357(a)(3). Almeida-Sanchez v. United States, 413 U.S. 266 (1975). The Court stated that border searches "in certain circumstances [may] take place not only at the border itself but at its functional equivalents as well." Id. at 272. By way of examples, the Court noted that a functional equivalent of the border could be "at an established station near the border, at a point marking the confluence of two or more roads

that extend from the border, . . . [and] at a St. Louis airport after a nonstop flight from Mexico City . . . ."  Id. at 273.  In contrast, the Court explained that the search of an automobile "by a roving patrol, on a California road that lies at all points at least 20 miles north of the Mexican border, was of a wholly different sort."  Id.  That search, the Court held, violated the Fourth Amendment.  Id.

The United States contends that the Dover Post Office, where Agent Lenzie detained and searched the packages addressed to Direct Wholesale, was the functional equivalent of the border or was an extension of the border under the circumstances in this case.  In support, the United States notes that inland post offices were deemed to be the functional equivalent of the border or an extension of the border in Sahanaja, 430 F.3d at 1053; United States v. Lowe, 575 F.2d 1193 (6th Cir. 1978); and United States v. King, 517 F.2d 350 (5th Cir. 1975).

In Sahanaja, the court considered whether a post office in Duarte, California, far from the border, was an extension of the border for purposes of § 482(a) to permit ICE agents to search a suspicious package that was mailed there.  The court explained that a location away from the actual border can be an extended border when "the totality of the circumstances, including the time and distance elapsed as well as the manner and extent of

9

surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in" the suspect package "was in the package at the time the package entered the jurisdiction of the United States." Sahanaja, 430 F.3d at 1054 (internal quotation marks omitted).  In Lowe, the Sixth Circuit concluded that § 482 allowed customs officials to open a package sent from Thailand to Detroit at the Detroit Post Office, instead of the original point of entry.  Lowe, 575 F.2d at 1194.  In King, the Fifth Circuit held that a customs inspection of mail that was sent to a post office box at a Birmingham, Alabama, branch post office from abroad was valid because the mail was still in the delivery process and therefore still subject to customs inspection.  King, 517 F.2d at 354.

In this case, the packages that Agent Lenzie intercepted and searched were addressed to Direct Wholesale in Dover, New Hampshire, and were sent from Hong Kong, China.  Nothing in this case suggests that the packages were not in the same condition as when they were sent from China.  Therefore, based on the circumstances in this case, the Dover Post Office is deemed to be the functional equivalent or an extension of the border for purposes of § 482(a).[2]

---

[2]Although the concepts of a functional equivalent of the border and an extension of the border are used differently in

2.  <u>Reasonable Suspicion</u>

Section 482(a) authorizes customs inspection based on "reasonable cause to suspect there is merchandise which was imported contrary to law . . . ."  The reasonable cause standard is less stringent than what is required for probable cause. <u>Ramsey</u>, 431 U.S. at 612.  The Ninth Circuit has articulated the standard to require that the customs official be "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material."  <u>United States v. Taghizadeh</u>, 87 F.3d 287, 289 (9th Cir. 1996) (internal quotation marks omitted).

The Supreme Court in <u>Ramsey</u> found reasonable cause to suspect contraband under § 482 based on the customs officer's knowledge that the envelopes were mailed from Thailand, were bulky and heavier than normal airmail, and seemed to have something inside.  431 U.S. at 614.  Reasonable cause to suspect in <u>Sahanaja</u> was based on the circumstances that the letter carrier who tried to deliver the package felt nauseated after handling the package, that the package had an odor and was labeled as containing videos but seemed to contain a liquid, and

---

some cases, here it is not necessary to make a distinction between them.

that there were multiple inquiries about the package from people who were not the addressee and one of them would not open the package in front of postal employees.  430 F.3d at 1054.  Reasonable cause to suspect contraband in a Federal Express envelope existed based on the recipient and return addresses being in Illinois although the envelope was mailed from Mexico, the thickness of the envelope, and the designation that the envelope contained "documents" which suggested passports.  United States v. Connors, 2002 WL 1359427, at *14-*15 (N.D. Ill. June 20, 2002).  Reasonable cause to suspect contraband in a package mailed from Taiwan was based on knowledge of a prior package from Taiwan with similar characteristics that had contained methamphetamine.  United States v. Nguyen, 701 F. Supp. 747, 751 (D. Hawaii 1988).

In this case, the following facts are found based on the verified complaint and the declaration provided by Agent Lenzie. Agent Lenzie began his participation in an investigation of Direct Wholesale for importing and distributing counterfeit Cisco computer parts in October of 2006.  Beginning in 2006, United States Customs and Border Protection seized at least twenty shipments of counterfeit Cisco parts that were associated with Direct Wholesale.  In July of 2008, Customs and Border Protection seized shipments of counterfeit Cisco parts being imported by

Direct Wholesale from China. In February of 2009, Customs seized shipments of counterfeit Cisco parts being imported by Direct Wholesale from Hong Kong, China. In 2007, Lenzie searched Direct Wholesale's business premises pursuant to a federal search warrant that resulted in the seizure of counterfeit computer parts worth hundreds of thousands of dollars. In 2010, Lenzie detained and seized counterfeit Cisco computer parts at the Dover Post Office that were being shipped to Direct Wholesale.

Through the ongoing investigation, ICE learned that international express mail packages from Hong Kong, which were addressed to Direct Wholesale, had arrived at the Dover Post Office on March 25 and March 28, 2011. The packages were similar to the packages that had been seized previously and that contained counterfeit computer parts. Lenzie examined the shipments and determined that they contained parts with the Cisco brand. The parts appeared to be counterfeit because of the packaging and because the values listed were far below Cisco's prices. Samples from the shipments were tested and determined to be counterfeit.

ICE learned that express mail packages had arrived at the Dover Post Office on August 6 and 8, 2011, that were addressed to Direct Wholesale and to an individual at Direct Wholesale's address. Again, the packages were sent from China and the

13

packaging was similar to the previous shipments. Lenzie examined the packages on August 8, 2011, and determined that they contained Cisco brand parts. Testing determined that the parts were counterfeit.

Lenzie had experience with and knowledge of Direct Wholesale's involvement in importation of counterfeit Cisco computer parts. The repeated shipments of counterfeit computer parts to Direct Wholesale from China that preceded the interception of the packages in March and August of 2011 provided reasonable cause to suspect that the packages contained counterfeit computer parts. As such, the detention, search, and seizure of the packages was lawful under § 482(a) and did not violate the Fourth Amendment.

## Conclusion

For the foregoing reasons, the claimant's motion to suppress (document no. 10) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 25, 2012

cc: Erin Elizabeth Murphy, Esquire
    Robert J. Rabuck, Esquire